# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO: 2:08-CV-317-TS |
| | ) | |
| GIL BEHLING & SON, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

In this action, Plaintiff Westfield Insurance Company (Westfield) seeks a declaratory judgment that it has no duty to defend or indemnify Defendants Gil Behling & Son, Inc. (GBS) and Larry Behling in a state court civil action brought by Defendant Gariup Construction Company (Gariup) against Defendants GBS and Larry Behling and others. This matter is before the Court on a Verified Motion for Default Judgment Against Gariup Construction Company [DE 15], filed by Westfield on August 21, 2009; a Motion for Summary Judgment Against Gil Behling & Son, Inc. and Larry Behling [DE 16], also filed by Westfield on August 21, 2009; and a Cross-Motion for Partial Summary Judgment [DE 20], filed by Defendants GBS and Larry Behling on September 19. These Motions are now ripe for ruling.

## BACKGROUND

On March 13, 2008, Gariup filed a Complaint for Damages [DE 1-7] (Gariup Complaint) in Cause Number 45C010803PL00037 in the Lake Circuit Court, Crown Point Division. In this state civil action, Gariup sued Carras-Szany-Kuhn & Associates, P.C., Thomas Kuhn, Dan Szany, GBS, and Larry Behling. The Complaint alleges that on or about September 20, 2007, Gariup and GBS submitted separate bids for a public construction project; that Carras-Szany-

Kuhn & Associates, P.C., worked as the project architect and was responsible for receiving and evaluating bids and recommending contract awards to the owner of the project; and that Gariup submitted the lowest bid on the project. It also claims that the defendants in that action "schemed and/or combined to restrict bidding in relation to the Project," and "intentionally violated numerous requirements relating to public work bidding statutes and otherwise wrongly rejected Gariup's bid for the Project all in order to restrict bidding such that the second lowest bidder, . . . Gil Behling & Son, Inc. received the contract . . . rather than Gariup, despite having submitted a higher bid." (Gariup Compl. ¶ 10, DE 1-7.) Gariup claims to have suffered substantial damages as "a result of this scheme and combination to restrain bidding perpetrated by the Defendants on the Project." (Gariup Compl. ¶ 11, DE 1-7.) As relief in that action, Gariup requests "a judgment against the Defendants which includes compensatory damages, treble damages pursuant to I.C. 24-1-2-7, attorney fe[e]s and all other just and proper relief in the premises." (Gariup Compl. Prayer for Relief, DE 1-7.)

On October 29, 2008, Westfield instituted this action by filing its Complaint for Declaratory Judgment [DE 1], seeking a declaration that it has no duty under the policy issued to GBS to defend or indemnify GBS or Larry Behling against the state court civil lawsuit. Westfield also named Gariup as a Defendant based upon its interest in the resolution of these disputed duties.

On January 5, 2009, the Clerk entered Default [DE 9] against Gariup because it has not defended in this action. On August 21, Westfield filed a Verified Motion for Default Judgment Against Gariup Construction Company [DE 15] and a Motion for Summary Judgment Against Gil Behling & Son, Inc. and Larry Behling [DE 16]. Westfield also filed a Brief in Support of Its

Motion for Summary Judgment [DE 19] and evidentiary materials. On September 19, GHS and

Larry Behling filed a Cross-Motion for Partial Summary Judgment [DE 20] as well as a

Response Brief in Opposition to Westfield's Motion for Summary Judgment and in Support of

[Their] Cross-Motion for Partial Summary Judgment [DE 21]. On October 3, Westfield filed a

Reply Brief in Support of Its Motion for Summary Judgment [DE 22] and additional evidentiary

material. On November 4, GBS and Larry Behling filed a Reply Brief in Support of [Their]

Cross-Motion for Partial Summary Judgment [DE 25].


## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should

be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when

"'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party

opposing a properly made and supported motion for summary judgment "may not rely merely on

allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise

provided in this rule—set out specific facts showing a genuine issue for trial." If appropriate,

summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P.

56(e)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that a court should

enter summary judgment, after adequate time for discovery, against a party "who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. However, the court is not required to draw every conceivable inference from the record—only reasonable ones. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989). Under local rule, facts that are submitted by the moving party and supported by admissible evidence are considered to exist without controversy, except to the extent that such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1.

## FACTS

On or about January 1, 2007, Westfield issued GBS Commercial Package Policy No. TRA 3 816 339. GBS was the named insured, and the dates of coverage were January 1, 2007, to January 1, 2008. The Package Policy included a Commercial General Liability (CGL) policy and a Commercial Umbrella policy.

**A.      The Commercial General Liability Policy**

Under the CGL Bodily Injury and Property Damage (BI/PD) coverage, which is known

as Coverage A in the insurance industry, Westfield agreed to the following:

a.      We will pay those sums that the insured becomes legally obligated to pay
as damages because of "bodily injury" or "property damage" to which this
insurance applies. We will have the right and duty to defend the insured
against any "suit" seeking those damages. However, we will have no duty
to defend the insured against any "suit" seeking damages for "bodily
injury" or "property damage" to which this insurance does not apply. We
may, at our discretion, investigate any "occurrence" and settle any claim
or "suit" that may result. But:
(1)      The amount we will pay for damages is limited as
described in Section III – Limits Of Insurance; and
(2)      Our right and duty to defend end when we have used up the
applicable limit of insurance in the payment of judgments
or settlements under Coverages A or B or medical expenses
under coverage C.
No other obligation or liability to pay sums or perform acts or services is
covered unless explicitly provided for under Supplementary Payments –
Coverages A and B.
b.      This insurance applies to "bodily injury" and "property damage" only if:
(1)      The "bodily injury" or "property damage" is caused by an
"occurrence" that takes place in the "coverage territory;"
(2)      The "bodily injury" or "property damage" occurs during
the policy period . . . .

(Policy, DE 18-2 at 29.) The term "occurrence" is defined as "an accident, including continuous

or repeated exposure to substantially the same general harmful conditions." (Policy, DE 18-2 at

42.) The term "bodily injury" is defined as "bodily injury, sickness or disease sustained by a

person, including death resulting from any of these at any time." (Policy, DE 18-2 at 41.) The

term "property damage," in relevant part, is defined as follows: "Physical injury to tangible

property, including all resulting loss of use of that property[, and a]ll such loss of use shall be

deemed to occur at the time of the physical injury that caused it"; or "Loss of use of tangible

property that is not physically injured[, and a]ll such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (Policy, DE 18-2 at 43.)

Under the CGL Personal and Advertising Injury (PAI) coverage, which is known as Coverage B in the insurance industry, Westfield agreed to the following:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may at our discretion investigate any offense and settle any claim or "suit" that may result. But:
   (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and
   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Policy, DE 18-2 at 33–34.) The term "personal and advertising injury" is defined as "injury, including consequential 'bodily injury' arising out of one or more of the following offenses":

a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or

g.      Infringing upon another's copyright, trade dress or slogan in your
        "advertisement".

(Policy, DE 18-2 at 43.)


**B.      The Commercial Umbrella Policy**

Under the Commercial Umbrella policy, Westfield agreed to the following:

a.      We will pay "ultimate net loss" in excess of the "retained limit" that the
        insured becomes legally obligated to pay as damages because of "personal
        injury" or "property damage" to which this insurance applies. We will
        have the right and duty to defend the insured against any "suit" seeking
        those damages. However, we will have no duty to defend the insured
        against any "suit" seeking damages for "personal injury" or "property
        damage" to which this insurance does not apply. We may, at our
        discretion, investigate any "occurrence" and settle any "claim" or "suit"
        that may result. But:
        (1)     The amount we will pay for damages is limited as
                described in (Section III) LIMITS OF INSURANCE; and
        (2)     Our right and duty to defend end when we have used up the
                applicable limit of insurance in the payment of judgments
                or settlements.
        No other obligation or liability to pay sums or perform acts or
        services is covered unless explicitly provided under Defense,
        Settlement and Supplementary Payments.
b.      This insurance applies only if the "personal injury" or "property damage"
        occurs during the policy period and is caused by an "occurrence" and prior
        to the policy period, no insured listed under Paragraph 1. of Section II –
        Who Is An Insured and no "employee" authorized to give or receive
        notice of an "occurrence" or claim, knew that the "personal injury" or
        "property damage" had occurred, in whole or in part. If such a listed
        insured or authorized "employee" knew, prior to the policy period, that the
        "personal injury" or "property damage" occurred, then any continuation,
        change or resumption of such "personal injury" or "property damage"
        during or after the policy period will be deemed to have been known prior
        to the policy period.

(Policy, DE 18-4 at 17.) The term "occurrence" is defined as "an accident or offense resulting in

'personal injury' or 'property damage'" and as follows:

a. With respect to "bodily injury" and "property damage", an accident includes continuous or repeated exposure to substantially the same general harmful conditions.

b. With respect to subsections b., c., d., e., f., g., and h. of the definition of "personal injury", an offense includes a series of offenses of the same or similar nature.

c. With respect to subsections e., f., g., and h. of the definition of "personal injury", an offense includes a series of offenses in which the same or similar advertising material is used regardless of the number or kind of media used.

All "personal injury" and "property damage" resulting from an accident or offense shall be considered as resulting from one "occurrence".

(Policy, DE 18-4 at 30.) By endorsement, the Commercial Umbrella policy defines the term "personal injury" as "any of the following offenses including death and care and loss of services resulting therefrom: A. 'Bodily injury' or B.'"Personal and Advertising injury'." (Policy, DE 18-4 at 39.) The term "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Policy, DE 18-4 at 28.) The term "property damage" is defined as follows:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Policy, DE 18-4 at 31.) The term "personal and advertising injury" is defined as "injury including consequential 'bodily injury', arising out of one or more of the following offenses":

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

8

e.      Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.      The use of another's advertising idea in your "advertisement"; or

g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Policy, DE 18-4 at 30–31.)


**C.      The State Lawsuit, Denial of Coverage, and Additional Undisputed Facts**

On or about May 30, 2008, GBS and Larry Behling provided Westfield with a copy of the Complaint filed in the state court civil action and requested that Westfield defend and indemnify them under the policies. Westfield has denied coverage and declined to defend GBS and Larry Behling in the state court civil action. Any of the relevant conduct of GBS and/or Larry Behling that provides the basis for the Gariup Complaint occurred during the policy period and within the coverage territory. GBS and Larry Behling, as an officer and owner of GBS, are insureds covered under the CBL and Commercial Umbrella policies provided by Westfield. Westfield is not relying or basing its denial of coverage or its denial of its duty to defend or indemnify on any specific coverage exclusion under the CGL policy or the Commercial Umbrella policy.

# DISCUSSION

## A.     The Parties' Arguments

Westfield argues that it is entitled to summary judgment on the following issues: that, under the CGL bodily injury/property damage coverage, the Gariup Complaint does not allege a covered "occurrence," a covered "bodily injury," or covered "property damage"; that the Gariup Complaint does not trigger the CGL personal and advertising injury coverage; that, under the Commercial Umbrella coverage, the Gariup Complaint does not allege a covered "occurrence," a covered "bodily injury," covered "property damage," or a covered "personal and advertising injury"; and that the treble damage claim is not covered. Thus, Westfield contends that, under the language of the policy, it does not have any duty to defend or indemnify Defendant GBS and Larry Behling in the state court civil action brought by Gariup. GBS and Larry Behling argue that they are entitled to summary judgment on the following issues: that Westfield has a duty to defend them under the personal and advertising injury provisions of the policy; and that a determination of Westfield's obligation to indemnify is premature and not ripe for adjudication in the absence of a finding of liability on the claims in the underlying dispute with Gariup. GBS and Larry Behling also assert that because Westfield has a duty to defend them under the personal and advertising injury provisions, it is unnecessary for the Court to determine whether Westfield has a duty to defend under other provisions of the policies. Westfield responds that the Gariup Complaint does not allege a covered personal and advertising injury offense of disparagement and that the duty to indemnify issue is ripe. GBS and Larry Behling reply that the Gariup Complaint does not clearly show facts that bar recovery under the personal and advertising injury provisions based on disparagement of another's goods or services and does not

relieve Westfield of its obligation to defend them from even unmeritorious claims, that Indiana and federal case law concerning personal and advertising injury coverages supports a finding that Westfield has a duty to defend them against Gariup's claims, and that a lack of specificity in the Gariup Complaint does not excuse Westfield from its duty to defend against damages claimed by Gariup.

Because the focus of the parties' submissions is on the personal and advertising injury provisions, the Court will address the duty to defend issues relative to those provisions and then address Westfield's duties under other policy provisions. However, the Court will begin by setting forth the relevant standards governing insurance contracts.

**B.      The Relevant Standards Governing Insurance Contracts**

As a federal court siting in diversity, this Court applies state law to resolve substantive questions. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). The parties agree that Indiana law applies, and thus this Court will apply the substantive law of Indiana in addressing the pending summary judgment motions. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) (stating that "the operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits"). When the Indiana Supreme Court has not confronted a particular issue, this Court is to predict how that court would decide the issue if presented with it. *Harper*, 433 F.3d at 525.

Generally, the interpretation or construction of a written contract such as an insurance policy is a question of law for which summary judgment is appropriate. *Cinergy Corp. v.*

*Associated Elec. & Gas Ins. Servs.*, 865 N.E.2d 571, 574 (Ind. 2007); *see also Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563 (7th Cir. 1997) (interpreting insurance policy and determining insurer's duty to defend as a matter of law). Under Indiana law, insurance policies are subject to the same rules of construction as other contracts. *See Mortorists Mut. Ins. Co. v. Wroblewski*, 898 N.E.2d 1272 (Ind. Ct. App. 2009). Contracts are interpreted to ascertain and effectuate the intent of the parties as reasonably manifested in the agreement, and if the language of the contract is clear and unambiguous, it should be given its plain and ordinary meaning. *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). Courts give effect to the intentions of the parties as expressed in the four corners of the agreement, and courts determine the meaning of a contract from an examination of all of the contract's provisions, and not from a consideration of individual words, phrases, or paragraphs read alone. *Moore*, 903 N.E.2d at 531. Parol, or extrinsic evidence, is inadmissible to add to, vary, or explain clear and unambiguous terms of a written instrument. *Evan,* 873 N.E.2d at 101. An ambiguity does not arise simply because the parties disagree on the interpretation; rather, contract language is ambiguous only if reasonable people could come to different conclusions about its meaning. *Id.* at 98; *Simon Prop. Group, L.P. v. Mich. Sporting Goods Distribs., Inc.,* 837 N.E.2d 1058, 1070 (Ind. Ct. App. 2005).

Accordingly, clear and unambiguous words in insurance contracts are given their plain and ordinary meaning, but ambiguous language is construed in favor of the insured. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002); *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985); *see also Schenkel & Schultz, Inc. v. Homestead Ins. Co.*, 119 F.3d 548, 550 (7th Cir. 1997) (applying Indiana law and instructing that courts must enforce unambiguous

insurance contracts according to their plain meaning, even if that limits the coverage available).

Ambiguity in an insurance contract exists when it is reasonably susceptible to more than one

interpretation and reasonable people would honestly differ as to its meaning. *Beam*, 765 N.E.2d

at 528; *Indiana Bell Tel. Co. v. Time Warner Commc'ns of Ind.,* 786 N.E.2d 301, 309–10 (Ind.

Ct. App. 2003).

An insurer's duty to defend is a contractual duty, and this duty is broader than its duty to

indemnify. *Federal Ins.*, 127 F.3d at 566 (citing *Seymour Mfg. Co. v. Commercial Union Ins.*

*Co.*, 665 N.E.2d 891, 892 (Ind. 1996)); *Nat'l Fire & Cas. Co. v. West By & Through Norris*, 107

F.3d 531, 535 (7th Cir. 1997); *Hoosier Ins. Co. v. Audiology Foundation of Am.*, 745 N.E.2d

300, 306 (Ind. Ct. App. 2001). Although an insurance company can limit its duty to defend, *cf.*

*Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 147 (Ind. Ct. App. 2006) (stating that if the

pleadings reveal that a claim is excluded under the policy, then no defense is required), an

insurer is generally obligated to defend its insured against suits alleging facts that might fall

within the coverage of the policy, *Federal Ins.*, 127 F.3d at 566.

Under Indiana law, an insurer's "duty to defend is determined solely by the nature of the

complaint," and "[w]hen the nature of the claim is obviously not covered by the policy of

insurance, there is no duty to defend." *Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283,

1285 (Ind. 1991). When a complaint sounds in intentional tort as well as in negligence, "the

insurance company is required to defend even though it may not be responsible for all of the

damages assessed, so long as there is an element of negligence to be determined." *Id.*

Furthermore, "[w]here an insurer's independent investigation of the facts underlying a complaint

against its insured reveals a claim is patently outside of the risk covered by the policy, the

insurer may properly refuse to defend." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 42–43 n.6 (Ind. 2002). If proof of any of the allegations could lead to coverage, then a duty to defend exists regardless of the merits of the allegations, making the duty to defend broader than the duty to indemnify. *Federal Ins.*, 127 F.3d at 566 (stating that "there is essentially only one standard—that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach").[1]

### C.    The Duty to Defend Under the Personal and Advertising Injury Coverages

The parties largely agree that the personal and advertising injury coverages under the CGL policy and the Commercial Umbrella policy are essentially the same. However, the parties have very different views of whether the Gariup Complaint alleges a claim that would come within the personal and advertising injury coverages so as to trigger Westfield's duty to defend. Westfield contends that the Gariup Complaint alleges a state antitrust violation that does not trigger any duty to defend under these coverages, and GBS and Larry Behling argue that Gariup Complaint seeks damages that involve or relate to a disparagement of a competitor's services that triggers Westfield's duty to defend.

In order for Westfield to have a duty to defend (and indemnify) under the personal and advertising injury coverages, the damages sought in the Gariup Complaint must result from a "personal and advertising injury" that arises out of one of seven enumerated offenses, which are identified in the Facts Section of this Opinion and Order. Although GBS and Larry Behling argue that courts have broadly interpreted personal and advertising injury coverage in favor of

---

[1] The Court finds persuasive Judge Tinder's reconciliation of *Kopko*, *Freidline*, and similar authorities. *See Trinity Homes LLC v. Ohio Cas. Ins. Co.*, No. 1:04-CV-1920, 2007 WL 1021825, at *4–7 (S.D. Ind. Mar. 30, 2007).

insureds and although they cite cases addressing various offenses that constitute personal and advertising injury, their argument comes to rest on one particular offense (the defamation/disparagement offense), and thus they argue that the Gariup Complaint alleges injury that arises out of the offense of an oral or written publication, in any manner, of material that disparages a person's or organization's goods, products, or services.[2] GBS and Larry Behling propose the following "publication" in an attempt to trigger a duty to defend under this coverage: "the essence of Gariup's allegations are that GBS[] and Behling allegedly promoted GBS[] through oral or written statements (which is within the definition of 'advertising') in a manner that wrongfully discredited Gariup's goods, products and/or services (which is within the definition of 'disparages')."[3] (GBS Resp. Br. & Br. in Supp. 13, DE 21.) They also argue that "the basic premise of Gariup's claims must be that GBS[] and Behling participated in communications of some sort with the Library Board that served to disparage Gariup's bid for services, so that the Library Board would not accept Gariup's bid for services." (GBS Reply 5, DE 25.) Additionally, they seek a broad reading of the Gariup Complaint so that the complaint is understood to seek both relief under the Indiana Antitrust Act and more general damages, and in

---

[2] This offense also includes an oral or written publication, in any manner, of material that slanders or libels a person or organization, but GBS and Larry Behling focus on the aspect of the offense related to disparaging goods, products, or services.

[3] In discussing issues related to Westfield's duty to indemnify, GBS and Larry Behling provide additional indications of their theory for how Westfield's duty to defend is triggered. They state:
> [T]o determine if Westfield is obligated to indemnify GBS[] or Behling under its policy, it must first be ascertained whether GBS[] or Behling is legally obligated to pay any damages arising out of the lowering in esteem or discrediting (i.e., disparagement) of Gariup's goods, products or services that were offered to be performed under Gariup's bid to the owner of the project.
> Such a determination necessarily involves adjudicating whether GBS[] or Behling are responsible for alleged statements concerning Gariup's bid that may have caused Gariup's bid to be rejected by the owner, or that caused the owner to accept GBS[]'s bid over that of Gariup's bid.
(GBS Resp. Br. & Br. in Supp. 17, DE 21.)

support of this broader reading, they point to the demand for "compensatory damages" in the prayer for relief. They also argue that no language or allegation in the Gariup Complaint "expressly limit[s] such claims" to the Indiana Antitrust Act. (GBS Resp. Br. & Br. in Supp. 13–14, DE 21.) Nevertheless, they contend that Westfield has a duty to defend against antitrust claims under the personal and advertising injury coverages.

1.  *The Gariup Complaint and the Indiana Antitrust Act*

Turning first to the Gariup Complaint, the Court notes that the allegations focus on the submission of bids by Gariup and GBS for a public construction project; Gariup's lower bid; GBS's higher bid; the conduct of GBS, Larry Behling, and other defendants in scheming or combining to restrict bidding; the intentional violation of bidding statutes by GBS, Larry Behling, and other defendants; the wrongful rejection of Gariup's bid to restrict bidding and to ensure that GBS received the contract; and the damage sustained by Gariup as a result of scheme and combination of GBS, Larry Behling, and other defendants to restrain bidding. The Gariup Complaint specifically references Indiana Code § 24-1-2-7 in seeking treble damages, but it also seeks damages and attorney's fees. Nothing in the Gariup Complaint suggests that Gariup is seeking damages or proceeding against any of the defendants on a theory of negligence.

The statute referenced in the Gariup Complaint is part of the Indiana Antitrust Act (Indiana Code § 24-1-2). Indiana Code § 24-1-2-1 makes illegal (a Class A misdemeanor) schemes, contracts, or combinations in restraint of trade or commerce. Indiana Code § 24-1-2-2 prohibits any person "monopoliz[ing] any part of the trade or commerce" in the state. Indiana Code § 24-1-2-3 provides that a "person who engages in any scheme, contract, or combination to

restrain or restrict bidding for the letting of any contract for private or public work, or restricts free competition for the letting of any contract for private or public work, commits a Class A misdemeanor." Indiana Code § 24-1-2-4 addresses remedies for "collusion or fraud" among contract bidders "as provided in section 3." Indiana Code § 24-1-2-7(a) authorizes any "person whose business or property is injured by a violation of this chapter [to] bring an action . . . , and is entitled to recover a penalty of threefold the damages awarded in the action, together with the costs of suit, including reasonable attorney's fees."

The Indiana Supreme Court has provided the following discussion regarding this statute:

> Sections 1 and 2 of the Indiana Antitrust Act, I.C. § 24-1-2-1, *et seq.*, are comparable to the federal Sherman Act, 15 U.S.C. sections 1 and 2, respectively. Like section 1 of the Sherman Act, Indiana Code section 24-1-2-1 addresses combinations in restraint of trade. Similarly, section 2 of the Sherman Act and Indiana Code section 24-1-2-2 both deal with monopolization. Indiana has two additional provisions for which there is no federal counterpart. Section 3, I.C. § 24-1-2-3, prohibits the restraint of bidding for letting of contracts whether public or private, and Section 4, I.C. § 24-1-2-4, addresses remedies for "collusion or fraud" among contract bidders. Specifically, Section 4 of the Indiana Antitrust Act provides that in cases of "collusion or fraud . . . among the bidders at the letting of any contract or work as provided in [Section 3] . . . the principal who lets the contract . . . shall not be liable for such letting or on account of said contract . . ." Section 4 thus frees the principal who lets a contract tainted by "collusion or fraud" among bidders from liability on the contract. By its terms, Section 4 applies only if there is "collusion or fraud . . . as provided in [Section 3]." It thus does not prohibit any conduct. Rather, it deals with remedies for violations of Section 3.
> Section 3 of the Indiana Antitrust Act does not use the term "collusion or fraud," but does prohibit certain conduct. . . .

*Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336, 339 (Ind. 2005). The Indiana Supreme Court also indicated that Sections 1, 2, and 3 of the Indiana Antitrust Act are the only portions of the act that "contain substantive prohibitions" and that these "sections are framed similarly to provisions of the Criminal Code and provide that it is a Class A Misdemeanor to

engage in the actions prohibited." *Id.* at 341. In discussing Section 7, the court explained that this

"section, tracking section 15 of the Clayton Act, provides treble damages and attorneys fees for

those injured in their 'business or property' by a violation of the Indiana Antitrust Act. This

section purports to give a right to treble damages to any 'person' injured by any 'person' doing

'any thing forbidden or declared to be unlawful' by any of the first three sections of the Indiana

Antitrust Act." *Id.* at 343. The Indiana Court of Appeals has more recently stated:

> Indiana Code section 24-1-2-3 makes unlawful acts which operate to
> restrain open and free competition in bidding to obtain contracts for public and
> private work. Pursuant to I.C. § 24-1-2-7, a person injured in his business or
> property by a violation of this statute may bring a civil action seeking treble
> damages, costs and attorney fees. Due to the dearth of decisions under the Indiana
> statute, our courts use decisional law under the similar federal antitrust law,
> section 4 of the Clayton Anti-Trust Act, 15 U.S.C. Section 15. *City of Auburn*
> *Through Bd. of Public Works and Safety v. Mavis,* 468 N.E.2d 584, 585 (Ind. Ct.
> App. 1984). Federal case law requires a plaintiff to prove three essential elements:
> 1) a violation of the statute, 2) injury to a person's business or property
> proximately caused by the violation, and 3) actual damages. *Id.*

*Thompson v. Vigo County Bd. of County Comm'rs*, 876 N.E.2d 1150, 1155 (Ind. Ct. App. 2007).

Considering the allegations (including the facts alleged) and the prayer for relief in the

Gariup Complaint, the Indiana Antitrust Act, and the Indiana appellate court opinions

interpreting that act, the Court finds that the Gariup Complaint premises Gariup's legal theory

and claim to recover on the Indiana Antitrust Act, which is a state law claim. The Gariup

Complaint seeks damages from GBS and Larry Behling for unlawfully scheming and combining

to restrain or restrict bidding on the public construction project. The allegations include specific

statutory terminology from the Indiana Antitrust Act, and the prayer for relief references a

specific statutory section in the Indiana Antitrust Act and seeks damages, treble damages, and

attorney's fees, as contemplated by Section 7 of the act. Indeed, Gariup's claim fits well within

the statutory paradigm for an Indiana antitrust claim brought pursuant to Indiana Code § 24-1-2-7 for an alleged violation of Indiana Code § 24-1-2-3. As the Indiana Supreme Court in interpreting the Indiana Antitrust Act has explained, a claim under Indiana Code § 24-1-2-7 for a violation of Indiana Code § 24-1-2-3 seeks remedies for "collusion or fraud" in the letting of any contract for private or public work. *Natare Corp.*, 824 N.E.2d at 339. Consequently, the Court disagrees with GBS and Larry Behling's assertion that the Gariup Complaint "is a bare bones notice pleading that alleges no operative facts within its eleven (11) rhetorical paragraphs from which one can discern any particular legal theory or basis for any claim of damages that Gariup is seeking against [them]" and "is a generic pleading that seeks monetary relief from [them] for alleged damages to Gariup's business services, without relying on any particularized legal theory or stated cause of action." (GBS & Behling Reply Br. 2, DE 25.)

2.  *The Personal and Advertising Injury Coverage and the Defamation/Disparagement Offense*

Westfield's policies broadly define the publication component of the defamation/disparagement offense such that it includes any manner of oral and written publication of material that qualifies under the defamation (slander or libel) component or the disparagement component. To understand the defamation/disparagement offense, it is helpful to begin by considering defamation law. Under Indiana defamation law, a plaintiff must prove a communication with defamatory imputation, malice, publication, and damages, and any statement actionable for defamation must not only be defamatory, but also false. *Trail v. Boys & Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 136 (Ind. 2006); *see also Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994) ("To maintain an action for defamation, a plaintiff must

show a communication with four elements: 1) defamatory imputation; 2) malice; 3) publication; and 4) damages."); Ind. Code § 34-15-1-1 ("In an action for libel or slander, it is sufficient to state generally that the defamatory matter published or spoken was about the plaintiff. If the defendant denies the allegation, the plaintiff must prove at trial the facts showing that the defamatory matter was published or spoken about the plaintiff."); Ind. Code § 34-15-1-2 ("In an action for libel or slander, the defendant may allege: (1) the truth of the matter charged as defamatory; and (2) mitigating circumstances to reduce the damages; and give either or both in evidence."). "'Defamatory' means 'defaming or tending to defame,'" and "[t]o 'defame' is [] 'to attack or injure the reputation or honor by false and malicious statements; malign, slander, or libel.'" *Ind. Ins. Co. v. North Vermillion Cmty. Sch. Corp.*, 665 N.E.2d 630, 635 (Ind. Ct. App. 1996) (quoting Webster's New World Dictionary 361 (3d ed. 1988)). "Defamatory words are not actionable unless they refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Schrader*, 639 N.E.2d at 261. Additionally, "'[d]efamation is that which tends to injure reputation and to diminish esteem, respect, goodwill or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff.'" *Sanderson v. Ind. Soft Water Servs., Inc.*, No. IP 00-0459, 2004 WL 1784755, at *6 (S.D. Ind. July 23, 2004) (quoting *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 522 (Ind. Ct. App. 2001)). Thus, defamation is a tort that "seeks to redress reputational harm suffered by a *person*." *Sanderson*, 2004 WL 1784755, at *6 (emphasis in original).

As for disparagement of goods, products, or services, the plain and ordinary meaning of the term "disparage" is "'[t]o dishonor (something or someone) by comparison' or '[t]o unjustly discredit or detract from the reputation of (another's property, product or business).'" *Rain v.*

*Rolls-Royce Corp.*, Cause No. 1:07-cv-1233, 2010 WL 107270, at *5 (S.D. Ind. Jan. 7, 2010),

and *Heritage Mut. Ins. Co. v. Advance Polymer Tech., Inc.*, 97 F. Supp. 2d 913, 932 (S.D. Ind.

2000) (both quoting Black's Law Dictionary (7th ed. 1999)). "To disparage is to 'lower in

esteem; discredit'." *Ind. Ins. Co.*, 665 N.E.2d at 635 (quoting Webster's New World Diction 135

(3d ed. 1988)). "Disparagement" is "[a] derogatory comparison of one thing with another";

"[t]he act or an instance of castigating or detracting from the reputation of, esp. unfairly or

untruthfully"; "[a] false and injurious statement that discredits or detracts from the reputation of

another's character, property, product, or business"; and "[r]eproach, disgrace, or indignity."

Black's Law Dictionary (9th ed. 2009).

Judge Hamilton has provided the following discussion of the nature of disparagement of

goods, products, and services claims:

> What [the plaintiff] calls "product disparagement" has also been described by
> commentators as "disparagement of property," "slander of goods," "commercial
> disparagement," "trade libel," and "injurious falsehood." See Prosser and Keaton
> on the Law of Torts § 128, at 963 (5th ed.1984); Restatement (Second) of Torts
> §§ 623A, 624 (1977). Although [the plaintiff] has not cited any application of the
> tort in Indiana, it appears that there is at least some limited recognition of the
> cause of action in the state. See generally, *Raybestos Products Co. v. Younger,* 54
> F.3d 1234, 1236 (7th Cir.1995) (applying Indiana law; affirming without
> discussion of relevant merits jury's verdict in favor of plaintiff on defamation and
> injurious falsehood claims). The tort differs from defamation in that it seeks to
> protect economic interests rather than reputational interests. *American Academic
> Suppliers, Inc. v. Beckley-Cardy, Inc.,* 922 F.2d 1317, 1323 (7th Cir.1991)
> (applying Illinois and Ohio law). But as under the law of defamation, a statement
> is not actionable unless it is clear from its content and context that it refers
> specifically to the plaintiff's products. See Speiser, Krause & Gans, The
> American Law of Torts § 33.5, at 1021 (1992); see also *Heritage Mut. Ins. Co. v.
> Advanced Polyner Technology, Inc.,* 97 F.Supp.2d 913, 932 (S.D.Ind.2000)
> (collecting cases interpreting "product disparagement" in the context of insurance
> policies insuring against advertising injury; "[t]he insured's lack of any direct
> reference to a competitor's goods or products repeatedly has compelled courts to
> find that the underlying plaintiff has not alleged an advertising injury under this
> disparagement offense.").

*Sanderson*, 2004 WL 1784755, at *7. Thus, disparagement of goods, products, or services involves the denigration, discrediting, or belittling of a person's or organization's goods, products, or services. *See Heritage Mut. Ins. Co.*, 97 F. Supp. 2d at 932.

Considering the "personal and advertising injury" terms of the Westfield policy and the defamatory/disparagement offense, the "slanders or libels" term would apply if Gariup (as a person or organization) alleged reputational harm or injury based upon alleged defamation by any manner of oral or written publication by GBS. The "disparages" term would apply if Gariup alleged harm or injury to economic interests by any manner of oral or written publication by GBS that denigrated, discredited, or belittled Gariup's goods, products, or services.

The Court must now determine whether the allegations of the Gariup Complaint seek damages for this sort of personal or advertising injury, and thus the Court must compare the nature of the claim and the facts alleged in the Gariup Complaint to the personal and advertising injury provisions of the policies. In performing its analysis, the Court looks beyond any labels used by Gariup in its complaint to the substance of Gariup's claim and the facts alleged in the complaint. As determined above, the Gariup Complaint presents a claim under the Indiana Antitrust Act, is brought pursuant to Indiana Code § 24-1-2-7 for an alleged violation of Indiana Code § 24-1-2-3, and seeks damages from GBS and Larry Behling for unlawfully scheming and combining to restrain or restrict bidding on the public construction project. The Gariup Complaint contains no factual allegation that GBS or Larry Behling made any false, libelous, slanderous, misleading, or defamatory statement that disparaged Gariup's goods, products, or services. Even liberally construed, the complaint provides no possible factual basis upon which Westfield might eventually be obligated to indemnify under the policy. Simply put, the Gariup

Complaint does not contain any allegations of defamation or disparagement and states no claim for defamation or disparagement against GBS or Larry Behling. Furthermore, no defamatory or disparaging communication is required (or even suggested) to establish a Section 3 violation and entitlement to relief under Section 7 of the Indiana Antitrust Act. Additionally, the theory of "publication" offered by GBS and Larry Behling is speculative and unsupported by the facts alleged in the Gariup Complaint. For the Court to find a duty to defend based upon the disparagement offense as GBS and Larry Behling propose, the Court would be required to speculate about extraneous "facts" regarding potential liability and stretch the allegations beyond reason to impose a duty on Westfield.

GBS and Larry Behling's suggestion that a disparagement claim is somehow implicit in the state antitrust claim advanced by Gariup under the Indiana Antitrust Act also fails. *See BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 822 (7th Cir. 2008) (emphasizing the need to focus on the allegations in the underlying complaint and stating that "[i]f we allow [the insured] to shoehorn these collateral claims into the umbrella policies' coverage of slander, libel, or disparagement, then an insured could easily transform a run-of-the-mill antitrust or securities action into a suit seeking redress of libel, slander, or disparagement"). Section 7 of the Indiana Antitrust Act permits unsuccessful bidders to challenge the award of a contract when a plaintiff alleges collusion or fraud. *Natare Corp.*, 824 N.E.2d at 340 (discussing *Shook Heavy & Envtl. Constr. Group v. City of Kokomo*, 632 N.E.2d 355, 358 (Ind. 1994)). It "purports to give a right to treble damages to any 'person' injured by any 'person' doing 'anything forbidden or declared to be unlawful' by any of the first three sections of the Indiana Antitrust Act." *Natare Corp.*, 824 N.E.2d at 343. Thus, Section 7 of the Indiana Antitrust Act permits unsuccessful bidders to seek

recovery for injury and harm to their businesses and property and to obtain treble damages, costs of suit, and attorney's fees from those who, among other things, unlawfully scheme, contract, or combine to restrain or restrict bidding for the letting of contracts for private or public work or who restrict free competition for those the letting of such contracts. *See Shook*, 632 N.E.2d at 358 (stating that Section 7 "confers on private individuals the right to challenge the award of a government contract where the governmental entity and successful bidder have engaged in collusion" and "addresses the concern . . . that a 'bidder invests considerable time, effort and money in submitting a bid and is pecuniarily damaged if illegal procedures are used to his disadvantage.'") (citing *City of Auburn v. Mavis*, 468 N.E.2d 584, 585 (Ind. Ct. App. 1984), and quoting *Gariup v. Stern*, 261 N.E.2d 578, 581 (Ind. 1970); *Mavis*, 468 N.E.2d at 586 ("The purpose of the antitrust act is to: '. . . prevent fraud and collusion in the letting of contract and to protect trade and commerce against unlawful restraints and monopolies. To accomplish these ends the legislature has seen fit to incorporate into the statute different remedies and drastic measures for the punishment of those who violate its provisions, and for the relief of those who suffer on account thereof."). The act does not seek to promote the interest a business has in preserving the reputation of its goods, products, or services such as a disparagement action would protect. *Cf. BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 821 (7th Cir. 2008) (applying Illinois law (including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*), finding no implicit claim for disparagement, determining that personal injury and advertising injury coverage was not triggered, and stating that "[t]he [act] seeks to vindicate the rights of consumers by creating a cause of action that protects consumers from deceptive trade practices, fraud, and other abusive acts by businesses that market products

to the public. In other words, the [act] allows consumers to recover damages for the economic injuries they suffer. It does not directly advance the interest another business has in preserving the reputation of its products that a disparagement action protects. Thus, the [act] does not expand a common-law disparagement plaintiff's avenues for legal relief . . . . Instead, the [act] fortifies the economic interests of consumers, who would not have standing to pursue relief for the libel, slander, or disparagement injury of a third party.") (internal citations omitted). Accordingly, it "seems extremely unlikely"that Westfield and GBS (the parties to this insurance contract) intended antitrust claims "to be covered—or even potentially covered—by a policy definition that sounds in libel, slander, and disparagement." *Id.* at 822.

For these reasons, the Court finds that the Gariup Complaint alleges no facts that GBS or Larry Behling defamed or disparaged Gariup's goods, products, or services through any manner of oral or written publication, and that the facts alleged in the Gariup Complaint do not fall within, or potentially within, the personal and advertising injury coverages.[4] Because there is no

---

[4] GBS and Larry Behling cite a number of Indiana Court of Appeals and Seventh Circuit opinions in support of their view that personal and advertising injury coverage is triggered because, in their view, the Gariup Complaint comes within the defamation/disparagement offense. However, the cases cited by GBS and Larry Behling are distinguishable from this case in important respects that render the holdings and reasoning in those cases inapplicable here. Some cases are distinguishable because they involved different offenses from the defamation/disparagement offense at issue in this case. *See, e.g., Stroh Brewing Co.*, 127 F.3d at 566–68 (finding a duty to defend under personal injury or advertising injury provision if caused by an offense of humiliation or discrimination, which was found to include alleged price discrimination, which was alleged in the underlying complaint); *Auto Owners Ins. Co. v. LA Oasis, Inc.*, No. 2:04-CV-174, 2005 WL 1313684, at *5–10 (N.D. Ind. May 26, 2005) (analyzing advertising injury coverage based upon offenses of misappropriation of advertising ideas or style of doing business and infringement of copyright, title, or slogan); *Audiology Found. of Am.*, 745 N.E.2d at 306–08 (finding a duty to defend under advertising injury provision based upon the offense of misappropriating advertising ideas or style of doing business, not the defamation/disparagement offense). Other cases are distinguishable because the facts alleged in the underlying complaints in those cases involved allegations of defamation and disparaging statements. *See, e.g., Cincinnati Ins. Co. v. Eastern Atl. Ins. Co.*, 260 F.3d 742, 744–45 (7th Cir. 2001) (finding a duty to defend under coverage involving the defamation/disparagement offense because of allegations of the underlying counterclaim referenced a letter that expressed concern over a particular person's character, suggested defamation by false notification and disparagement of services, and charged tortious interference with an agreement); *Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, 832 F.2d 1037, 1040–41 (7th Cir. 1987) (per curiam) (finding a duty to defend under personal injury and advertising offense coverage in a case alleging federal and state antitrust claims in addition to common law business torts including claims that the insured

allegation of disparagement of Gariup's goods, products, or services, the Court finds that the personal and advertising injury coverage is not triggered under the CGL policy or the Commercial Umbrella policy and that Westfield has no duty to defend.

**D.     The Duty to Defend Under the Bodily Injury, Property Damage, and Personal Injury Coverage**s

Westfield sought summary judgment against GBS and Larry Behling as to coverage for bodily injury and property damage under the CGL policy and the Commercial Umbrella policy. As Westfield correctly notes, GBS and Larry Behling "did oppose Westfield's contention that Gariup's Complaint failed to allege 'bodily injury' or 'property damage' caused by an 'occurrence'." (Westfield Reply Br. 2, DE 22.) Because there appears to be no genuine issue of material fact, the Court will determine as a matter of law whether Westfield is entitled to judgment on these coverage issues.

Under the CGL policy, Westfield agreed to defend and indemnify GBS in a suit seeking damages because of "bodily injury" and "property damage" caused by an "occurrence" in the coverage territory and during the policy period. Under the Commercial Umbrella policy, Westfield agreed to defend and indemnify GBS in a suit seeking damages because of "personal injury" (i.e., bodily injury or personal and advertising injury) or "property damage" caused by an

conspired to make false, misleading, and defamatory statements disparaging plaintiffs' products and services and wilfully disparaged goods, services, or business of plaintiffs in advertisements); *Liberty Mut. Ins. Co. v. OSI Indus.*, 831 N.E.2d 192, 199 (Ind. Ct. App. 2005) (finding a duty to defend under personal injury provision that included the defamation/disparagement offense because the underlying complaint alleged that the insureds disparaged a particular product, technology, and ownership of the product or technology; *North Vermillion Cmty. Sch. Corp.*, 665 N.E.2d at 634–35 (finding a duty to defend under personal injury coverage when policy provided coverage for the publication or utterance of a libel or slander or of other defamatory or disparaging material and when underlying complaint alleged humiliation, embarrassment, and damages to reputation caused by defendants' conduct, which included impugning plaintiff's good reputation, harassing plaintiff, subjecting plaintiff to ridicule and humiliation, making derogatory evaluations, and alleging incompetency and neglect of duty by plaintiff).

"occurrence" during the policy period. Westfield argues that Indiana has not yet addressed whether a claim under the Indiana or federal antitrust statutes qualifies as a covered "occurrence," but the Court does not need to determine that issue because the Gariup Complaint does not seek damages for "personal injury" (that is, bodily injury or personal and advertising injury), "bodily injury" (that is, bodily injury, sickness, or disease sustained by a person) or "property damage" (that is, physical injury to tangible property, resulting loss of use of that property, and loss of use of tangible property) as these terms are defined in the policies. Because Gariup is not seeking damages for "personal injury," "bodily injury" or "property damage" as defined in the policies, the Court finds that the personal injury, bodily injury, and property damage coverages are not triggered under the CGL policy or the Commercial Umbrella policy and that Westfield has no duty to defend.

**E.      The Duty to Indemnify**

Having determined that Westfield has no duty to defend under the CGL policy or the Commercial Umbrella policy and considering that the duty to defend is broader than the duty to indemnify, it follows that Westfield has no duty to indemnify GBS or Larry Behling. Consequently, Westfield is also entitled to a declaration that it has no duty to indemnify GBS or Larry Behling in the state civil lawsuit instituted by Gariup.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Westfield's Verified Motion for Default Judgment Against Gariup Construction Company [DE 15] and Westfield's Motion for Summary

Judgment Against Gil Behling & Son, Inc. and Larry Behling [DE 16], and the Court DENIES

GBS and Larry Behling's Cross-Motion for Partial Summary Judgment [DE 20].

The Court DECLARES:

(1)     Westfield has no duty to defend GBS or Larry Behling under Commercial

Package Policy No. TRA 3 816 339 in the lawsuit brought by Gariup as Cause Number

45C010803PL00037 in the Lake Circuit Court, Crown Point Division.

(2)     Westfield has no duty to indemnify GBS or Larry Behling under Commercial

Package Policy No. TRA 3 816 339 in the lawsuit brought by Gariup as Cause Number

45C010803PL00037 in the Lake Circuit Court, Crown Point Division.

The Court ORDERS the Clerk of this Court to enter judgment accordingly.

SO ORDERED on March 15, 2010.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN, JUDGE
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION